## Gary Lorden's Case.

No. 97-P-1707.

Suffolk. December 7, 1998. - November 26, 1999.

Present: Jacobs, Smith, & Rapoza, JJ.

*Workers' Compensation Act,* Medical benefits, Incapacity, Impartial medical examiner, Prima facie evidence.

Where an administrative judge hearing a workers' compensation claim rejected the report of the impartial medical examiner and refused to allow either party to submit additional medical evidence, there was no adequate basis for his findings and rulings or for his conclusion that the employee had not established an injury; as a result, the matter was remanded for further proceedings, including the opportunity for the parties to submit additional medical evidence in accordance with G. L. c. 152, § 11A(2). [278-280]

Appeal from a decision of the Industrial Accident Reviewing Board.

*Joseph M. Burke* for the employee.

*James A. Garretson* for the insurer.

Smith, J. On April 21, 1992, the employee, Gary Lorden, filed a claim for workers' compensation benefits, seeking payment for medical expenses and various periods of disability associated with a condition he claimed developed while he was employed at Cape Ann Transportation Company (Cape Ann). Lorden, age thirty-nine, worked full-time for Cape Ann from March 13, 1989, to November 4, 1989, and part-time as a shop helper (fifteen to thirty hours per week) from March 26, 1990, to July 26, 1991. Lorden alleged he was exposed to carbon monoxide fumes and chemical solvents which caused him to develop toxic encephalopathy. He claimed that his resulting disability entitled him to total incapacity benefits from May 5, 1989, through November 1, 1989 (pursuant to G. L. c. 152, § 34), and to partial incapacity benefits from November 1, 1989, to the present and continuing (pursuant to G. L. c. 152, § 35). He also claimed medical benefits under G. L. c. 152, § 30.

The workers' compensation insurer, Aetna Casualty and Surety Company (Aetna), denied Lorden's claim under G. L. c. 152, § 7. The parties were unable to resolve the dispute at a conciliation conducted pursuant to G. L. c. 152, § 10, where-upon the case was referred to an administrative judge at the Department of Industrial Accidents (DIA) pursuant to G. L. c. 152, § 10A.

On December 31, 1992, the administrative judge issued an order denying Lorden benefits. Lorden appealed, and on May 14, 1993, the administrative judge held a hearing. At the com-mencement of the hearing, Lorden contended that the case was medically complex and moved for the admission of additional medical evidence. Aetna joined in Lorden's motion, but the judge subsequently denied it.

Additional hearings were held on June 28 and August 18, 1993. At the August hearing, Lorden offered the report of an impartial medical examiner, dated June 22, 1993, as evidence. Aetna requested and was allowed the opportunity to depose the impartial medical examiner. The deposition was held on September 10, 1993, and by letter dated September 28 to the administrative judge, Aetna questioned the adequacy of the impartial medical examiner's report and requested the op-portunity to submit additional medical evidence. The administra-tive judge denied the request, and the record was closed on December 19, 1993. On May 31, 1994, the administrative judge filed a decision which denied and dismissed the claim. Lorden appealed, and on April 30, 1996, the reviewing board affirmed the decision of the administrative judge, although one judge dis-sented.

We summarize the facts found by the administrative judge. The garage where Lorden worked was 100 feet long, 50 feet wide and 25 feet high, with five garage bay doors on one side of the building. Inside, there was a trench approximately one foot wide running the length of the garage. This trench was meant to collect any debris and fluids resulting from the work in the garage. The trench was cleaned out once a week by a shop helper and occasionally by a mechanic. The cleaning involved spraying a solution onto the garage floor, covering it with a drying material, moving the oil and other materials from the garage floor into the trench, and then shoveling the waste out of the trench. Lorden participated in this aspect of the job.

Lorden also assisted, as did all of the employees, with clean-

ing the company's buses. To wash the exterior of the vehicles, they sprayed industrial strength solvents through a steam cleaner. This was done primarily outside, although on rare occasions in the cold weather the procedure was done in the garage. Other cleaning of the buses (for example, the interior or the undercarriage) was always done outside of the garage and usually performed less frequently than the outer portions of the buses.

There were times when the bus engines would run while the vehicles were in the garage, but this was not standard practice. Moreover, in warm weather all or most of the garage bay doors would be open, while in colder weather at least one door would be left open.

On April 26, 1989, Lorden collapsed onto the garage floor, unconscious, while making some electrical repairs on a bus. Upon being revived, Lorden was sweating, weak and believed he was having a heart attack. He was sent home. Lorden's physician found him fit to return to work on May 9, 1989.

Lorden was demoted to the position of second class mechanic on May 2, 1989. This position involved less diagnostic work, fewer supervisory responsibilities and paid $2 less per hour than his previous position. Lorden returned to work as a second class mechanic and continued as such without interruption until November 4, 1989. Thereafter, he left Cape Ann to work for a doctor who performed physical examinations for insurance companies. He worked there for several months until the business failed.

On March 26, 1990, Lorden again began working for Cape Ann, but only as a part-time shop helper. This position involved cleaning and light maintenance work on the vehicles, and Lorden only worked between fifteen and thirty hours per week. He earned $10 per hour.

Early in 1991, Lorden's supervisor died from cancer. Suspecting his death was somehow connected to the toxins at Cape Ann, Lorden requested and received information from the employer concerning the solvents and other materials used in the workplace. Lorden then expressed concern to the president of Cape Ann that the chemicals used on site posed a health risk to the employees. It was suggested that he be tested by a physician. Lorden sought an evaluation from a facility named Workwell, and then returned to his regular duties. After receiving a report from Workwell, Cape Ann hired a safety consultant, John

Furrh, to inspect the premises and provide an analysis regarding any occupational hazards. Furrh found the garage to be very clean and safe, particularly on a first inspection. He discovered that there were dangerous chemicals on the premises, as well as exhaust fumes, but none of them presented any significant danger. Furrh suggested changes, including better ventilation, signs for the fire extinguishers, and locating waste oil tanks outside of the premises. Nearly all of the recommendations had been implemented by July, 1991.

In that same month, Lorden was seen by Dr. Rose Goldman, an occupational medicine physician. On her advice, he resigned from his position at Cape Ann. His last day of work was July 26, 1991. Thereafter, he found work during two summers at a park in New Hampshire, collected unemployment and then in February, 1993, began working as a security guard at the Aquarium Garage in Boston. Meanwhile, Dr. Goldman referred Lorden to Dr. Rebecca White at University Hospital in Boston. Dr. White conducted neuropsychological testing, but Lorden received no further treatment.

At the time of his hearing in May, 1993, Lorden claimed to be suffering from poor memory, shortness of breath, and a general feeling of weakness and fatigue. He has experienced these symptoms since 1989. The medical evidence consisted of the report and deposition testimony of the impartial medical examiner, Thomas Winters, M.D., who specializes in internal medicine, occupational medicine, and infectious diseases. Dr. Winters diagnosed Lorden's condition as "mild to moderate toxic encephalopathy secondary to multiple solvent exposure." He believed that Lorden's condition was "more likely than not" related to his work at Cape Ann, and he felt that, at the time of the hearing, Lorden was incapable of performing work requiring any short term or immediate memory use.

1. *The administrative judge's decision.* The administrative judge rejected the impartial medical examiner's opinion, ruling that it was based on facts which either were not in evidence, or the judge did not find to be facts. Moreover, the administrative judge determined that the facts, as he found them, did not support the conclusions reached by the impartial medical examiner.

The administrative judge ruled that even though the impartial medical examiner believed that the chemicals and bus exhaust detrimentally affected Lorden, neither the material safety data

sheets nor the results from the air samples were offered into evidence. The administrative judge credited the testimony of Furrh, Cape Ann's witness, that the solvents and exhaust fumes present at the work site in March, 1991, were not sufficient to create a risk of harm to the employees.

The administrative judge also considered specific aspects of the impartial medical examiner's report, indicating the discrepancies which the judge believed caused the report to be inaccurate; most of those sections involved background information provided by Lorden to the physician.

The administrative judge concluded that, even if he adopted the impartial medical examiner's report, Lorden still had not established any incapacity resulting from his employment. The judge also found that Lorden had earned in excess of his average weekly wage since his departure from Cape Ann, and that he therefore had failed to establish a diminution in his earning capacity resulting from any injury allegedly suffered while employed with Cape Ann.[1]

Accordingly, the administrative judge concluded that Lorden had not established that he sustained an injury, and denied and dismissed the claim.

2. *The reviewing board's decision.* Lorden appealed, and on April 30, 1996, a divided reviewing board summarily affirmed the administrative judge's decision. The dissenting judge believed that the administrative judge committed error when he rejected the impartial medical examiner's report based on a lack of proof, but then did not permit Lorden to submit additional medical evidence. According to the dissenting judge, that error amounted to a deprivation of procedural due process and was counter to law. The judge concluded that the matter should be vacated and remanded, and Lorden should be allowed to renew his motion for additional medical evidence on the basis of complexity.

3. *The rejection of the impartial medical examiner's report.* On appeal, Lorden claims that the administrative judge committed error in (1) failing to give prima facie effect to the impartial medical examiner's report and (2) rejecting the report where

---

[1]Neither party on appeal nor the reviewing board discuss this finding by the administrative judge. Because there has to be a remand we do not consider the matter.

there was an evidentiary foundation for the opinions expressed therein.[2]

Pursuant to G. L. c. 152, § 11A(2), the report of the impartial medical examiner "shall be admitted into evidence at the hearing" and the "report shall constitute prima facie evidence of the matters contained therein."

General Laws c. 152, § 11A(2), as inserted by St. 1991, c. 398, § 30, states in relevant part:

> "no additional medical reports or depositions of any physicians shall be allowed by right to any party; provided, however, that the administrative judge may, on his own initiative or upon a motion by a party, authorize the submission of additional medical testimony when such judge finds that said testimony is required due to the complexity of the medical issues involved or the inadequacy of the report submitted by the impartial medical examiner."

In *O'Brien's Case*, 424 Mass. 16, 19-25 (1996), the Supreme Judicial Court considered whether G. L. c. 152, § 11A(2), was unconstitutional on its face on due process grounds insofar as it denies the opportunity to offer, as of right, medical testimony to contradict the report of the impartial medical examiner. In ruling that the statute was indeed constitutional on its face, the court stated that the statute gives to the administrative judge the power to authorize the submission of additional medical evidence "when [the] judge finds that said testimony is required

---

[2]Lorden also claims that the administrative judge committed error because he commenced the hearing prior to the submission of the impartial physician's report.

General Laws c. 152, § 11A(2), states in relevant part:

> "The impartial medical-examiner . . . shall examine the employee and make a report at least one week prior to the beginning of the hearing . . . . No hearing shall be commenced sooner than one week after such report has been received by the parties."

Lorden's hearing commenced on May 14, 1993. The impartial medical examiner's report was dated June 28, 1993. That report was admitted in evidence on August 18, 1993.

Clearly, the administrative judge did not comply with G. L. c. 152, § 11A, when he commenced the hearing. In any event, because we remand the matter, we do not consider this issue.

due to the complexity of the medical issues involved or the inadequacy of the report submitted by the impartial medical examiner." *Id.* at 22. Further, the court stated, "[c]ertainly a decision by the administrative judge to foreclose further medical testimony where such testimony is necessary to present fairly the medical issues would represent grounds either for reversal or recommittal. In any case where these procedures still failed to offer a party an opportunity to present testimony necessary to present fairly the medical issues, there then might well be failure of due process as applied in that case." *Id.* at 22-23. See *Coggin* v. *Massachusetts Parole Bd.*, 42 Mass. App. Ct. 584, 589 (1997).

The administrative judge's rejection of the impartial medical examiner's report coupled with his refusal of both parties' motions to submit additional medical evidence resulted in no medical evidence whatsoever being before the administrative judge. Therefore, the administrative judge relied upon his own knowledge of medical matters in order to form his judgment.

"Medical testimony is highly desirable in all cases and its absence is a proper ground for concern." *Lovely's Case*, 336 Mass. 512, 515 (1957). We recognize that there are some matters where the cause or nature of the injury is so obvious that it is within the common knowledge and everyday experience of the general population. *Lovely's Case, supra* at 515-516. However, this case is not one of those instances.

The nature and cause of toxic encephalopathy is a medically complex matter, certainly not within the common knowledge and everyday experience of the general population. Therefore, the administrative judge, after he rejected the impartial medical examiner's report, should have allowed the parties to submit additional medical evidence to support their claims. See *O'Brien's Case*, 424 Mass. at 22-23; *Coggin* v. *Massachusetts Parole Bd.*, 42 Mass. App. Ct. at 589.[3]

The decision of the reviewing board is vacated. The matter is

---

[3]We also note that the administrative judge's findings were in some respects not based on the evidence. He found that the impartial medical examiner had incorrectly described the garage where Lorden worked to be twenty by forty feet; the impartial medical examiner, however, was correct in describing Lorden's work area to be a twenty by forty foot bay in a larger garage.

Moreover, the impartial medical examiner testified that his diagnosis of Lorden's condition or his opinion concerning what caused its onset would not have been changed even based on the facts found by the administrative judge.

remanded to the Department of Industrial Accidents for further proceedings consistent with this opinion.

*So ordered.*